# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| ALEXANDRA SIROIS,<br><br>          Plaintiff,<br><br>   vs.<br><br>EAST WEST PARTNERS, INC.,<br>HARRY H. FRAMPTON III, ANDREW<br>SUTTON, and NICOLE GREENER,<br><br>         Defendants. | CIV. NO. 17-00383 DKW-RLP<br><br><br>**ORDER GRANTING AND<br>DENYING IN PART<br>DEFENDANTS' MOTION TO<br>DISMISS INDIVIDUAL<br>DEFENDANTS AND TO STRIKE<br>IMMATERIAL, IMPERTINENT<br>AND SCANDALOUS MATTERS** |

Before the Court is Defendants' Motion to Dismiss Individual Defendants and to Strike Immaterial, Impertinent and Scandalous Matters (Dkt. No. 17) filed August 30, 2017. Defendants' Motion is GRANTED to the extent it asserts that service of the summons and complaint on the individual defendants has not been properly effected. Plaintiff is therefore ordered to effect service on them in accordance with the Federal Rules of Civil Procedure, or file proof that such service has already occurred, within thirty days of this Order. Defendants' Motion is DENIED in all other respects for the reasons that follow.

## BACKGROUND

Plaintiff Alexandra Sirois, a former Hawaii-based employee of Defendant East West Partners, Inc. ("EWP"), brings claims against EWP for hostile work

environment and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*, and the Hawaii Employment Practices Act ("HEPA"), Hawai'i Revised Statutes ("HRS") § 378-2, *et seq.* Compl. ¶ 1, Dkt. No. 1. EWP, which builds, sells, and manages luxury real estate developments throughout the United States, is a for-profit corporation organized and existing under the laws of the state of Colorado with corporate headquarters in Avon, Colorado. Compl. ¶ 6. Also named as defendants are Harry H. Frampton III, EWP's CEO; Andrew Sutton, EWP's Managing Partner in Hawaii and Sirois' direct supervisor; and Nicole Greener, EWP's Director of Human Resources (collectively, "Individual Defendants"), each of whom Sirois accuses of aiding and abetting unlawful harassment and retaliation in violation of HEPA. Compl. ¶¶ 7–9. Sirois asserts an additional claim against EWP for unpaid overtime compensation, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Compl. ¶ 3.

*Factual Background*

EWP hired Sirois as an Assistant Project Manager, with an initial annual base salary of $60,000, in January 2014. Compl. ¶ 16. In less than three years, Sirois received three pay increases, bringing her base compensation to $92,500, illustrative of her value to EWP. Compl. ¶¶ 20–21. As an Assistant Project Manager, Sirois performed a variety of office and clerical tasks, "including but not

limited to providing general support to Sutton; answering incoming phone calls; processing paperwork relating to home sales and change orders; preparing marketing materials and general correspondence; coordinating change orders with contractors; and planning and attending marketing events." Compl. ¶ 64.

Sirois reported directly to Defendant Sutton, and at all times material, Sirois and Sutton were EWP's only full-time employees in Hawaii.[1] Compl. ¶¶ 22–23. Sirois summarizes Sutton's alleged harassment and mistreatment of her—based on sex and sexual orientation—as follows:

a) requiring that [Sirois] organize and attend marketing events so that Sutton could "pimp out" his own wife, Kelsey Sutton ("Mrs. Sutton"), and her scantily clad friends, providing Mrs. Sutton with a forum to drink excessively, dance inappropriately, kiss, grope, and have sex with a wealthy, married EWP customer, Brett Dedeaux ("Dedeaux");

b) taunting [Sirois] by making offensive comments about other women in [her] workplace, including [Sirois'] own mother;

c) requiring that [Sirois] participate in a scheme to refrain from disclosing to Dedeaux's wife, Jean Dedeaux ("Mrs. Dedeaux") and Dedeaux's parents any information relating to Mrs. Sutton's and Dedeaux's illicit affair;[2]

_____

[1]Sirois claims that, for the duration of her employment with EWP, she "regularly worked in excess of forty (40) hours per week," yet EWP misclassified her as a salaried, exempt employee, and failed to pay her overtime compensation for her hours in excess of forty per week. Compl. ¶¶ 68–70.

[2]Sirois claims that, "[a]s part of her job, [she] was required to interact and communicate with Mrs. Dedeaux and Dedeaux's parents," and that "[a]t that time, it was clear to [Sirois] that Mrs. Dedeaux was not fully aware of Dedeaux's infidelity with Mrs. Sutton." Compl. ¶ 39. As such, Sirois "was required by EWP and Sutton to participate in a scheme to conceal the fact that her supervisor's wife was having an adulterous affair with an EWP customer." Compl. ¶ 40.

<table>
<tr><td>d)</td><td>taunting [Sirois] by putting a woman on speaker phone and deliberately speaking to her in a rude and condescending manner as a way of asserting his male dominance;</td></tr>
</table>

d) taunting [Sirois] by putting a woman on speaker phone and deliberately speaking to her in a rude and condescending manner as a way of asserting his male dominance;

e) deliberately picking on Plaintiff, taunting and ridiculing her, and attempting to manufacture arguments with her as a way of asserting his male dominance;

f) mocking [Sirois] by asking her to give him and Mrs. Sutton private tennis lessons during her non-working hours even though [Sirois] and Sutton never socialized outside of work;

g) asking [Sirois] to hire "hot" female dancers for a marketing event;[3]

h) telling [Sirois] that her work attire was not feminine enough;

i) requiring that [Sirois] coordinate marketing events and schedules with Mrs. Sutton so that she could continue her illicit affair with Dedeaux;[4] and

j) following [Sirois] around with his phone and taking videos of her even after she repeatedly pleaded that he stop.[5]

Compl. ¶¶ 25(a)–(j). Thus, "[b]y his demeanor, words, and actions, Sutton made

---

[3] *See* Compl. ¶ 41 ("In connection with the 2016 Surf and Turf event, Sutton asked Plaintiff to book 'hot' female dancers because he wanted to ensure a sexually-charged atmosphere.").

[4] For example, the Complaint contains detailed allegations of EWP marketing events that Sirois planned. During these events, Mrs. Sutton and Dedeaux's inappropriate behavior was so evident to those present that individuals in the Kauai luxury real estate community have since asked Sirois about the "sexual activity" taking place at her events. Compl. ¶¶ 31, 33–36, 46. Sirois contends that Sutton instructed her to schedule these events "directly with Mrs. Sutton, solely so that Mrs. Sutton could continue her illicit affair with Dedeaux." Compl. ¶ 38.

[5] Sirois contends that during a 2016 event, Sutton "taunt[ed] and ridicule[d] her throughout the evening, including in front of others at the event" in this manner, including by filming Sirois from behind while she, wearing a dress for the event, was hitting golf balls. Compl. ¶¶ 47–49.

clear . . . that he had no respect for women in a professional work environment." Compl. ¶ 26. Sirois also contends that "Sutton regularly directed hostility towards [her] because she was an openly gay female." Compl. ¶ 27.

Although she complained to Greener about the hostile environment Sutton had created, Sirois states that Greener consistently failed to investigate her concerns and did not take any remedial action to address Sirois' complaints. Compl. ¶¶ 28–30, 43–44, 51–52. As such, Sirois "asked to speak directly with EWP CEO, Frampton." Compl. ¶¶ 54–55. According to Sirois, however, Frampton too gave no credence to her complaints. Instead, he "abruptly terminated [her] employment, stating that it was clear to him that [Sirois] could no longer work together with Sutton," but he also offered her a few weeks of severance pay for being a "nice lady." Compl. ¶¶ 56–57. Sirois later received a termination letter from EWP dated September 28, 2016,[6] which states that the decision to terminate Sirois' employment was based on her "uncorroborated allegations" that demonstrated a "lack of respect and trust for Mr. Sutton." Sirois refers to this letter as "direct evidence of unlawful retaliation." Compl. ¶¶ 58–60.

### Procedural History

On August 3, 2017, after exhausting her administrative remedies with the Federal Equal Employment Opportunity Commission ("EEOC") (Compl. ¶ 62),

---

[6]The termination letter has not been made part of the record in this case.

Sirois initiated the instant action. The Complaint asserts five counts against

EWP—Retaliation in violation of both Title VII, 42 U.S.C. §§ 2000, *et seq*. (Count

I), and HEPA, HRS § 378-2(2) (Count II); Hostile Work Environment, in violation

of both Title VII, 42 U.S.C. §§ 2000, *et seq*. (Count III), and HEPA, HRS § 378-

2(1)(A) (Count IV); and for overtime compensation under the FLSA (Count VI).

Only Count V is alleged against the Individual Defendants. That Count charges all

three Individual Defendants with Aiding and Abetting EWP and each other "in

discriminating against [Sirois] in the terms and conditions of her employment in

violation of HRS § 378-2(a)(3) by subjecting [Sirois] to a sexually hostile work

environment as well as harassment based on her sex and/or sexual orientation."

Compl. ¶ 99. Count V also asserts that Frampton and Greener only aided and

abetted EWP and each other in retaliating against Sirois. Compl. ¶ 100.

On August 30, 2017, the Individual Defendants filed the instant Motion to

Dismiss. MTD, Dkt. No. 17.[7] In the MTD, the Individual Defendants attack

Sirois' Complaint on four grounds. First, they argue that Count V of the

Complaint fails to state a valid claim for aiding and abetting under HRS § 378-

2(a)(3), primarily because of conclusory allegations of unlawful intent. Mem. in

Supp. of MTD at 6–8, Dkt. No. 17-1. Second, the Individual Defendants ask the

---

[7]EWP filed its substantive joinder (Dkt. No. 25) to the Individual Defendants' MTD on
September 5, 2017.

Court to strike paragraphs 25(a), 25(c), 25(i), 32–40, 46, and 57 from the Complaint due to their "immaterial, impertinent and scandalous" nature. Mem. in Supp. at 2, 8–11. Third, the Individual Defendants argue that Greener is not subject to personal jurisdiction in this Court because she lacks sufficient minimum contacts with Hawaii. Mem. in Supp. at 12–13. And fourth, the Individual Defendants allege they were not properly served. Mem. in Supp. at 13–14.

Sirois filed her opposition to the MTD (Dkt. No. 44) on October 19, 2017, and Defendants filed a Consolidated Reply Memorandum in Support of the MTD (Dkt. No. 45) on October 26, 2017. Following a hearing on November 9, 2017, the Court took matters under advisement. The instant disposition follows.

## STANDARD OF REVIEW

### *Rule 12(f) Motion to Strike*

Federal Rule of Civil Procedure ("FRCP") 12(f) provides that the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "[T]he function of a Rule 12(f) motion is to avoid the waste of time and money spent on litigating spurious issues by dispensing with those issues before trial . . . ." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993) (quoting *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)), *rev'd on other grounds*, 510 U.S. 517 (1994). Grounds for a motion to strike must be readily apparent from the face of the pleadings or

from materials that may be judicially noticed. *Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 183 F.R.D. 550, 554 (D. Haw. 1998). A matter will not be stricken from a pleading unless it is clear that it can have no possible bearing on the subject matter of the litigation. *Id.*; *see also Empire Tractor Corp. v. Time, Inc.*, 10 F.R.D. 121, 122 (E.D. Pa. 1950) ("[A]nd if there is any doubt as to whether under any contingency the matter [sought to be stricken] may [at some time] raise an issue, the motion should be denied." (citations omitted)). Motions to strike are also disfavored in the absence of prejudice. *Horowitz v. Sulla*, 2014 WL 1048798, at *10 (D. Haw. Mar. 14, 2014) (citing *Wailua Assocs.*, 183 F.R.D. at 553); *see also United States v. 729,773 Acres of Land*, 531 F. Supp. 967, 971 (D. Haw. 1982); *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) ("Given their disfavored status, courts often require 'a showing of prejudice by the moving party' before granting the requested relief.") (quoting *Secs. & Exch. Comm'n v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995)).

Ultimately, whether to grant a motion to strike under Rule 12(f) lies within the sound discretion of the district court. *Fantasy*, 984 F.2d at 1528; *Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613, 618 (1st Cir. 1988) (citation omitted). "In exercising that discretion, the Court "views the challenged pleadings in the light most favorable to the [non-moving party], and resolves any doubt as to

8

the relevance of the challenged allegations in favor of the plaintiff." *Nielson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003) (internal citations omitted); *see also Wailua Assocs.*, 183 F.R.D. at 554 (citing *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1301 (9th Cir. 1992)).

*Motion to Dismiss Pursuant to FRCP 12(b)(6)*

A motion to dismiss under Rule 12(b)(6) of the FRCP challenges a complaint's compliance with the pleading requirements of the Federal Rules. The Court may dismiss a complaint pursuant to FRCP 12(b)(6) for "failure to state a claim upon which relief can be granted" when there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In other words, plaintiffs are required to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the Court to infer "the mere possibility of misconduct" do not

constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by FRCP 8(a)(2). *Id.* at 677, 679 (explaining that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *accord Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citing *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002)), *as amended*. However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (explaining that the facts-accepted-as-true/construed-in-the-light-most-favorable tenet "is inapplicable to legal conclusions"); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . , a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Moreover, the court need not accept as true allegations that contradict matters properly subject

to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

*Motion to Dismiss Pursuant to FRCP 12(b)(2)*

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *accord Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 268 (9th Cir. 1995). "In determining whether [the plaintiff] has met this burden, uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (quoting *WNS Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)); *accord Pure, Ltd. v. Shasta Bev., Inc.*, 691 F. Supp. 1274, 1277 (D. Haw. 1988). It is within the Court's discretion to allow the plaintiff to submit affidavits, allow affidavits plus discovery, or to conduct an evidentiary hearing. *Data Disc., Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

*Leave to Amend*

If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.

2000) (restating the "longstanding rule that '[l]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect'" (quoting *Balistreri*, 901 F.2d at 701) (internal quotation marks omitted)).

## DISCUSSION

## I.    THE RULE 12(F) MOTION TO STRIKE IS DENIED.

Defendants ask the Court to strike paragraphs 25(a), 25(c), 25(i), 32–40, 46, and 57 from the Complaint under FRCP 12(f) due to the "immaterial, impertinent and scandalous" nature of their contents.  Mem. in Supp. at 2, Dkt. No. 17-1.  The challenged paragraphs refer to Defendant Sutton's alleged act of "pimp[ing] out" his spouse (*e.g.*, Compl. ¶¶ 25(a), 32, 37); they identify Sutton's spouse and a married EWP client and label their alleged relationship as an "illicit affair" (Compl. ¶¶ 25(c), 25(i), 38), an "illicit sexual relationship" (Compl. ¶ 34), an "adulterous affair" (Compl. ¶ 40), and an "infidelity" (Compl. ¶ 39); and they adjudge the alleged couple's various actions as "inappropriate" (*e.g.*, Compl. ¶¶ 34, 36, 46).  The challenged paragraphs also describe the EWP client with whom Sutton's wife was allegedly having an affair and the client's friends as "wealthy" (Compl. ¶¶ 33, 35), Sutton's wife's friends as "young" and "scantily clad" (Compl. ¶ 35), and claim that the EWP client's own spouse "was not fully aware of" her husband's alleged "infidelity" with Sutton's wife (Compl. ¶ 39).  Finally, Defendants request that the Court strike the paragraph labeling Frampton a

12

"misogynist." *See* Compl. ¶ 57 ("A true misogynist, Frampton also said that Plaintiff would receive a few weeks of severance pay because she was a 'nice lady.'"). While these allegations are, in some ways, sensational and salacious, and it is understandable that Defendants wish to keep the details hidden, the challenged paragraphs are directly related to Sirois' claims for hostile work environment and retaliation. Accordingly, the Rule 12(f) Motion to Strike is DENIED.

Under FRCP 12(f), the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In this context, *redundant* allegations are "those that are needlessly repetitive or wholly foreign to the issues involved in the action." *Alco Pac.*, 217 F. Supp. 2d at 1033 (citing *Gilbert v. Eli Lilly Co., Inc.*, 56 F.R.D. 116, 121, n.4 (D.P.R.1972)). *Immaterial* matters are those that "have no essential or important relationship to the claim for relief or the defenses being pleaded," and *impertinent* matters are "statements that do not pertain and are not necessary to the issues in question." *Fantasy*, 984 F.2d at 1527 (quoting 5 Wright & Miller, Fed. Prac. & Proc. § 1382, at 706–07, 711 (1990)). "Allegations may be stricken as *scandalous* if the matter bears no possible relation to the controversy" or when it may cause "prejudice" to the objecting party. *Talbot v. Robert Matthews Distrib., Co.*, 961 F.2d 654, 664–65 (7th Cir. 1992) (emphasis added) (citations omitted); *Kamakeeaina v. City & Cty. of Honolulu*, 2013 WL 816411, at *3 (D. Haw. Feb. 15, 2013) (citing *Talbot*,

*supra*), *recommendation adopted*, 2013 WL 816090 (D. Haw. Mar. 5, 2013).[8]

Here, Sirois' principal claim is that Sutton, her direct supervisor, ordered her to set up client parties with a sexual overtone in order to, among other things, promote his spouse's carousing with the firm's clients, and specifically with Mr. Dedeaux. Compl. ¶¶ 25(a), 25(i), 38. In other words, Sutton directed Sirois to facilitate a sexual relationship for his benefit and for the benefit of EWP. The implication is that Sutton's decision to use his spouse in this manner was part of his business development plan. Moreover, Sirois alleges that she was required to do this on multiple occasions as part of her job duties. Compl. ¶¶ 25(a), 25(i), 31,

---

[8]Courts have described "[a] *scandalous* matter" as one that "improperly casts a derogatory light on someone, usually a party." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2007) (formatting altered) (citing *Skadegaard v. Farrell*, 578 F. Supp. 1209, 1221 (D.N.J. 1984); *Gilbert*, 56 F.R.D. at 120 n.7; *Martin v. Hunt*, 28 F.R.D. 35 (D. Mass. 1961)). However, "[t]he fact that [the] allegations may cast the [defendant] in a 'derogatory light' is insufficient to warrant the striking of allegations from the complaint." *Weng v. Solis*, 842 F. Supp. 2d 147, 160 (D.D.C. 2012) (citation omitted) ("The word 'scandalous' in Rule 12(f) generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court.") (quoting *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003)); *see also Consumer Sols. REO, LLC v. Hillery*, 658 F. Supp. 2d 1002 (N.D. Cal. 2009) ("Scandalous matters are allegations 'that unnecessary reflect[] on the moral character of an individual or state[] anything in repulsive language that detracts from the dignity of the court.'") (quoting *Cobell v. Norton*, 229 F.R.D. 5 (D.D.C. 2005)). Indeed, courts regularly decline to strike from the record "unpleasant" facts that are relevant to a cause of action or defense—and this is particularly true when those facts "do not degrade [the] defendant's moral character any more than do the allegations themselves." *Gateway Bottling, Inc. v. Dad's Rootbeer Co.*, 53 F.R.D. 585, 588, (D.C. Pa. 1971) ("The facts here may be unpleasant for plaintiff to have on the record and they certainly contain charges of reprehensible conduct but the same is true of many facts of life which are entitled to be pleaded as relevant to a cause of action or a defense."); *see also Nkemakolam v. St. John's Military Sch.*, 876 F. Supp. 2d 1240, 1246 (D. Kan. 2012) (declining to strike exhibits as "scandalous" under Rule 12(f) where they "do not offend the dignity of the Court, are related to plaintiffs' factual allegations, and do not degrade defendant's moral character any more than do the allegations themselves," but striking exhibits as immaterial based on plaintiff's noncompliance with the FRCP) (citing *Dean v. Gillette*, 2004 WL 3202867, at *1 (D. Kan. June 8, 2004)).

38–41, 47, 52. And she states that her involvement in these events became common knowledge within the Kauai real estate community in which she worked. Compl. ¶¶ 36–37. This, Sirois contends, is what created the problematic sexual environment in EWP's two-person Hawaii office. As such, the Individual Defendants' argument that "such scandalous allegations" cannot "plausibly be necessary and material to the issues" is unconvincing. *See* Mem. in Supp. at 9 (citing *Fantasy*, 984 F.2d at 1528).

"In determining if an environment is so hostile as to violate Title VII, we consider whether, in light of 'all the circumstances,' the harassment is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112–13 (9th Cir. 2004) (quoting *Nichols v. Azteca Rest. Enter.*, 256 F.3d 864, 872 (9th Cir. 2001)). Although the Individual Defendants caution the Court against "rak[ing] over the intimate details of an alleged adulterous affair between two non-parties having potential impacts on two families not before the court" (Mem. in Supp. 10), each of the challenged paragraphs "relates in some way" to the hostile environment allegedly created by Defendants, and those facts that do not specifically refer to the Individual Defendants themselves "serve a contextual purpose that the Court finds entirely proper." *City of Los Angeles v. Citigroup Inc.*, 24 F. Supp. 3d 940, 956 (C.D. Cal. 2014) (finding that paragraphs did not rise

to the level of being impertinent, immaterial, or scandalous under 12(f) where "[e]very paragraph relates in some way to mortgage-lending practices," and those paragraphs that "are not specific to Defendants' lending practices" or the jurisdiction specifically "serve a contextual purpose that the Court finds entirely proper"); *see also Campbell v. Feld Entm't, Inc.*, 2014 WL 1366581, at *15 (N.D. Cal. 2014) (refusing to dismiss factual allegations falling outside the applicable statute of limitations because the allegations provided relevant and appropriate context).

Further, sexual harassment includes "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature," *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986) (quoting the EEOC Guidelines describing the kinds of workplace conduct that might be actionable under 29 C.F.R. § 1604.11(a)(1985)), but there is no requirement that such conduct be *directed at* the plaintiff. *McGinest*, 360 F.3d at 1117 ("[I]f racial hostility pervades a workplace, a plaintiff may establish a violation of Title VII, even if such hostility was not directly targeted at the plaintiff." (citations omitted)); *Patane v. Clark*, 508 F.3d 106, 114 (2d Cir. 2007) ("[A] plaintiff need only allege that she suffered a hostile work environment because of her gender, not that all of the offensive conduct was specifically aimed at her."). A so-called "hostile" work environment may exist regardless of who the conduct was directed at, so long as "such conduct

has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Meritor Sav. Bank*, 477 U.S. at 65, 67 (quoting 29 C.F.R. § 1604.11(a)(3)); *Kishaba v. Hilton Hotels Corp.*, 737 F. Supp. 549, 554 (D. Haw. 1990) ("Even if Plaintiff herself was never the object of racial harassment, she might nevertheless have a Title VII claim if she were forced to work in an atmosphere in which such harassment was pervasive.") (citing *Vinson v. Taylor*, 753 F.2d 141, 146 (D.C. Cir. 1985), *aff'd*, 477 U.S. 57, 65–66 (1986)), *aff'd*, 936 F.2d 578 (9th Cir. 1991).

Moreover, where there are allegations against an employer regarding the employer's own sexual comments, advances, and actions demonstrating favoritism, among other things, an employee has a claim for hostile environment merely for being *exposed* to that atmosphere—even where the advances and comments were simply viewed and/or overheard. *See, e.g.*, *Woods v. Graphic Commc'ns*, 925 F.2d 1195, 1202 (9th Cir. 1991) (finding that plaintiff "was surrounded by [sufficient] racial hostility" in the workplace to constitute actionable workplace harassment under Title VII, "[e]ven if only a few of [the defendants'] acts were directed at [plaintiff] personally"); *Patane*, 508 F.3d at 114 (upholding hostile work environment claim for plaintiff who "regularly observed [her employer] watching pornographic videos" but who never witnessed the employer performing sexual

acts or viewed the videos herself); *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1123 (9th Cir. 2008) (finding that despite plaintiff's failure to allege that he was personally present at the time, plaintiff's allegations describing the rejection of a fellow African-American residency candidate's application and offensive remarks by members of the Residency Selection Committee were relevant to plaintiff's claim that he was subjected to a hostile work environment because of his race).

Here, Sirois alleges that Sutton "direct[ed] her to plan and attend events intended to have a sexually charged environment that included 'pimping out' his wife to Dedeaux." Opp'n at 15–16, Dkt. No. 44. Such an allegation is directly related to the hostile work environment that Sutton allegedly created. *See Patane*, 508 F.3d at 114; *Johnson*, 534 F.3d at 1123. And where Sirois alleges that after she complained to Human Resources about the allegedly hostile work environment—including the "sexually charged work environment created by Sutton at the Surf and Turf events" (Opp'n at 10)—she was terminated, the retaliation claim logically follows.[9]

Therefore, the Court declines to strike any of the specified paragraphs.

_____

[9]To establish a prima facie case of retaliation against an employee for opposing unlawful discrimination under Title VII, 42 U.S.C. § 2000e-3(a) (2003), the plaintiff must show: "1) that [she] acted to protect [her] Title VII rights; 2) that an adverse employment action was thereafter taken against [her]; and 3) that a causal link existed between the two events." *McGinest*, 360 F.3d at 1124 (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994), *cert. denied*, 513 U.S. 1082 (1995)).

**II. SIROIS PLEADS A VALID HRS § 378-2 CLAIM AGAINST THE INDIVIDUAL DEFENDANTS FOR PURPOSES OF FRCP 12(b)(6).**

Defendants argue that Sirois has failed to plead sufficient facts to sustain her claim for Unlawful Discriminatory Practices, in violation of HRS § 378-2(a).  With respect to Sutton specifically, Defendants urge the Court to dismiss the aiding-and-abetting-harassment claim because the allegations underlying Count V merely assert "that multiple persons were involved in alleged discrimination" without "identify[ing] any allegation against Sutton involving another individual, ignoring the well-settled rule that he cannot be sued for abetting himself."  Reply at 8–9 (citing Mem. in Supp. at 7–8 (collecting cases in support)).  Noting that "Greener is alleged to have failed to investigate or address Sirois' complaints about Sutton," and that "Frampton allegedly fired [Sirois] in a phone call" (Mem. in Supp. at 6), Defendants also argue that Sirois' allegations of "mere <u>inaction</u> or joint participation in a termination alleged to be unlawful" are insufficient to impose liability on Frampton and Greener for aiding-and-abetting (Reply at 9).  None of these assertions has merit.

Section 378-2(a)(3) of the HRS renders it "an unlawful discriminatory practice . . . [f]or any person, whether an employer, employee, or not, to aid, abet, incite, compel, or coerce the doing of any of the discriminatory practices forbidden by this part, or to attempt to do so[.]"  To plead a valid claim under HRS § 378-2(a), a plaintiff need only identify (1) the allegedly aiding-and-abetting individual

defendant "as the person who incited, compelled, or coerced the discriminatory actions" against the plaintiff; and (2) another, different defendant or employee "as the person who was incited, compelled, or coerced into taking discriminatory actions" against him. *Bell v. Terminix Int'l Co. Ltd. P'ship*, 2016 WL 3166318, at *7 (D. Haw. June 6, 2016) (quoting *Kosegarten v. Dep't of the Prosecuting Att'y*, 2012 WL 1158742, at *6 (D. Haw. Apr. 5, 2012)). This Court has previously stated that the test would be satisfied by allegations involving "any communication by any of the individual defendants [that] led anyone else to discriminate or partake in unlawful practices" against the plaintiff. *Park v. Oahu Transit Servs., Inc.*, 2011 WL 3490190, at *1 (D. Haw. Aug. 10, 2011).

Sirois' allegations have little trouble meeting these standards. Sirois has pled that each of the three "Individual Defendants aided and abetted EWP and each other in discriminating against Plaintiff in the terms and conditions of her employment . . . by subjecting [her] to a sexually hostile work environment as well as harassment based on her sex and/or sexual orientation." Compl. ¶ 99. Suggesting that the three individuals worked together, Sirois argues that "Sutton did not torment Plaintiff without help" because "Greener and Frampton ignored Plaintiff's repeated complaints about Sutton's abusive conduct, thereby allowing

Sutton's abuse of Plaintiff to continue unabated."[10]  Opp'n at 20.  Describing

Greener's failure to investigate as an allegation of "mere inaction," Defendants

argue that the pleaded facts with respect to Greener fall outside the scope of

Section 378-2(a) liability.  Reply at 9 n.1 (stating that Sirois fails to identify facts

establishing "that any defendant overtly acted to incite or coerce any other

individual defendant to commit a discriminatory act," which is required by HRS

§ 378-2(a)'s "verbs of an active, criminal nature bespeaking a higher level of

culpability than a garden-variety discrimination claim").  But Defendants fail to

provide any applicable authority in support, and the Court knows of none.[11]  The

Court finds that the allegations in the Complaint sufficiently indicate that Greener

supported Sutton in his conduct—albeit via her failure to investigate or impose

remedial action—because it not only benefit Sutton, but the company generally.  In

fact, portions of the Complaint indicate that Sutton's actions, and Greener's alike,

---

[10]For example, the Complaint alleges that "[a]pproximately two days before the 2016 Surf and Turf event," Sirois "again complained to Greener about Sutton, the Surf and Turf event, and the hostile work environment she was experiencing" and "specifically requested that Greener conduct an investigation."  Yet "Greener, with no justification, again ignored [Sirois'] complaints and refused to conduct any investigation," and "[t]he Surf and Turf event took place as scheduled on September 8, 2016."  Compl. ¶¶ 43–45.

[11]Although Defendants cite to *Rosemond v. United States*, 134 S. Ct. 1240, 1245 (2014), in support of their contention that "'[a]iding and abetting' requires an 'affirmative act' to further an offense and specific intent" (Mem. in Supp. at 9 n.1, Dkt. No. 45), *Rosemond* did not consider any *civil* aiding-and-abetting-harassment statute, such as HRS § 378-2.  Rather, the case involved federal *criminal* aiding-and-abetting, in violation of 18 U.S.C. § 2.

were motivated by a goal to develop investors and clientele,[12] and that Sutton was willing to do anything (including making his spouse available to those potential investors and clientele) to achieve this goal.

Defendants also challenge Sirois' retaliation-based HRS § 378-2(a) claim—that "Frampton and Greener aided and abetted EWP and each other in retaliating against Plaintiff by terminating her employment because she engaged in activity protected by the HEPA" (Compl. ¶ 100)—as conclusory, stating that "it is insufficient to merely assert that multiple persons were involved in alleged discrimination" (Mem. in Supp. at 6–8 (citing *Park*, 2011 WL 3490190, at *1)).[13]

---

[12]For example, the pleadings refer to Dedeaux as an "important" and "wealthy" "businessman" and EWP customer; to Dedeaux's friends as "a group of wealthy men from California"; to the Surf and Turf events as "EWP marketing event[s]"; and they suggest that "[m]ultiple people conducting business in the relatively small Kauai luxury real estate community, including real estate executives and sales representatives" had knowledge of the improprieties associated with the events. Compl. ¶¶ 25(a), 25(i), 31, 33, 35–37.

[13]In *Park*, the plaintiff, a former bus driver for Oahu Transit Services ("OTS"), alleged that during two years of employment, he was subject to "verbal harassment, discrimination, and retaliation" at the hands of four individual defendants—one OTS co-worker, and three OTS supervisors. 2011 WL 3490190, at *1. In support of his HRS § 378 claim against the four defendants, plaintiff only offered two allegations regarding the individual defendants themselves—that the co-worker-defendant and one of the supervisor-defendants "yelled and screamed at him over the bus communication system" "as though he were retarded" despite the fact they did not speak to other drivers that way; and that another of the supervisor-defendants, who was a long-time friend of the co-worker-defendant, allegedly discouraged the plaintiff from filing a complaint about the matter by telling plaintiff that "he could get fired, suspended, or disciplined for making a false claim of discrimination." *Id.* (summarizing the plaintiff's First Amended Complaint ¶¶ 11–12, 14). The plaintiff also supported his aiding-and-abetting theory by pointing to other allegations that various non-defendant individuals (*i.e.*, the OTS assistant superintendent, a personnel manager, the Vice President of OTS, and various unnamed employees in the OTS central dispatch office) disciplined plaintiff based on complaints against him notwithstanding plaintiff's own representations; attempted to physically "intimidate and threaten plaintiff" into "confess[ing] a falsehood" in connection with these alleged complaints;

However, "[o]nly a statement of facts so conclusory that it fails to give notice of the basic events and circumstances on which a plaintiff relies should be rejected as legally insufficient under 12(b)(6)." *Patane*, 508 F.3d at 116 (refusing to discount as overly conclusory the employee-plaintiff's contention in Title VII retaliation claim that employer "removed 'virtually all of [employee-plaintiff's] secretarial functions' in response to her reporting his conduct") (citing *Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978) (per curiam)). And the allegations here are not conclusory in the manner Defendants suggest. The allegations here, for instance, are not of EWP personnel working independent of one another. Rather, Sirois alleges that the three Individual Defendants worked in concert, acquiescing in Sutton's actions for the business benefit of the company and themselves. Upon receiving Sirois' complaints, Greener and Frampton continued their concerted efforts by ignoring her requests for help, refusing to investigate, and when all of that failed to quiet her, terminating her and hoping that

---

and ignored his distress call regarding a mentally unstable passenger, stating that they were "too busy" to respond to the plaintiff-employee's call. *Park*, 2011 WL 3490190, at *2. The court dismissed the plaintiff's aiding-and-abetting claim against individual defendants without prejudice, finding that the foregoing allegations were insufficient to establish individual-defendant liability under HRS § 378-2(a). The court noted the absence of allegations that "any communication by any of the Individual Defendants led anyone else to also discriminate or partake in unlawful practices against him" and explained that "[s]imply the fact that multiple people may have treated Plaintiff poorly, or even discriminatorily, does not automatically imply that they aided and abetted each other in doing so." *Park*, 2011 WL 3490190, at *8.

a modicum of severance pay would finally do the trick.[14]  While these allegations

remain just that—allegations—they are sufficient to plead an HRS § 378-2(a)

claim.[15]

## III.  GREENER IS SUBJECT TO PERSONAL JURISDICTION.

Defendants assert that Greener should be dismissed under FRCP 12(b)(2) for

lack of personal jurisdiction.  Greener has not, they argue, "'purposefully

avail[ed]' herself of the privilege of conducting activities in Hawaii, thereby

invoking its benefits and protections," because she is not based in Hawaii, does not

conduct business in Hawaii, and Sirois does not allege that Greener has

---

[14]Indeed, the Complaint notes that "Plaintiff asked to speak directly with EWP CEO, Frampton" only after "[r]ecognizing that Greener was completely unwilling to address the serious accusations of harassment that Plaintiff had lodged."  Compl. ¶¶ 54–56.  And while Sirois did receive an audience with Frampton, together with Greener, on or about September 26, 2016, Frampton was equally dismissive.  *Id.*  The Complaint adds that, "[w]hile it was Frampton who communicated EWP's decision to terminate Plaintiff, it was Greener who authored the termination letter . . . which explicitly set forth the basis for Plaintiff's termination as being her complaints about Sutton's harassment."  Opp'n at 20; *see* Compl. ¶ 58 (representing that the letter stated "that the decision to terminate Plaintiff's employment was based upon her 'uncorroborated allegations' which demonstrated a 'lack of respect and trust for Mr. Sutton'").  As such, the pleadings satisfactorily provide the Individual Defendants with "notice of the basic events and circumstances on which [Sirois] relies" in support of Count V.  *Patane*, 508 F.3d at 116.

[15]Note that Defendants also argue that "Count V fails to state a claim because Sirois did not allege that she received a right to sue from the Hawaii Civil Rights Commission, as required by Haw. Rev. Stat. § 368-12."  Reply at 8 (citing *Linville v. Hawaii*, 874 F. Supp. 1095, 1104 n.4 (D. Haw. 1994)).  Because this argument is raised for the first time in reply, the Court declines to consider it.  LR7.4; *see also Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) ("[W]e decline to consider new issues raised for the first time in a reply brief.") (citing *Thompson v. Comm'r*, 631 F.2d 642, 649 (9th Cir. 1980)); *Nevada v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990) (following "the general rule that appellants cannot raise a new issue for the first time in their reply briefs") (citing *United States v. Birtle*, 792 F.2d 846, 848 (9th Cir. 1986)).

affirmatively acted in some way that was "aimed at" EWP's office in Hawaii. Mem. in Supp. at 12–13, Dkt. No. 17-1 (citations omitted). The Court disagrees.

"Jurisdiction can be exercised over a nonresident defendant without violating notions of due process only when the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice.'" *Spring Patents, Inc. v. Avon Rubber & Plastics, Inc.*, 183 F. Supp. 2d 1198, 1204 (D. Haw. 2001) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In order to determine whether the exercise of specific jurisdiction over a nonresident defendant is proper, the Ninth Circuit has articulated a three-part test for what a plaintiff must show: "(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum; (2) the claim arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). Here, Sirois satisfies all three prongs.

"Physical contacts with the forum state are not necessary to establish purposeful availment." *Spring Patents*, 183 F. Supp. 2d at 1205 (citing *Calder v. Jones*, 465 U.S. 783, 788–89 (1984) (holding that a foreign act that is both aimed at and has effect in the forum state satisfies purposeful availment)). Rather, an out-

of-forum defendant's alleged acts are said to have been "expressly aimed" at the plaintiff when the defendant is "alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters*, 223 F.3d at 1087. Here, Greener clearly knew Sirois was a Hawaii resident, as there are only two EWP employees located in Hawaii; she communicated with Sirois on multiple occasions regarding what Sirois perceived to be wrongful conduct occurring in Hawaii; and she identifies herself as EWP's company-wide Human Resources Director. Compl. ¶¶ 9, 23; Greener Decl. ¶¶ 2, 3, Dkt. No. 17-2. Sirois has pled—and Greener does not deny—that Greener "received Plaintiff's complaints" regarding her work for EWP in Hawaii, and that Greener "failed to conduct an investigation or take appropriate remedial actions" with respect to those complaints. Mem in Supp. at 12 (emphasis omitted). And although Greener may have committed the alleged unlawful acts underlying this claim from afar, the acts resulted in the termination of a Hawaii-based employee. Accordingly, Sirois has satisfactorily demonstrated purposeful availment. *See, e.g.*, *Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 358–59 (S.D.N.Y. 2009) (holding that e-mail, telephonic, and facsimile discussions between the plaintiff and the out-of-state defendant in an employment discrimination case regarding complaints about alleged discriminatory work assignments were sufficient to confer personal jurisdiction over the defendant).

Sirois' claims must also "arise out of or result from" Greener's Hawaii-related activities. *Bancroft & Masters*, 223 F.3d at 1086. "[A] claim arises out of the forum-related activities if it would not have happened but for the forum-related activities." *Omeluk*, 52 F.3d at 271 (citing *Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir. 1990), *rev'd*, 499 U.S. 585 (1991)). Here, Greener allegedly aided-and-abetted Sutton in harassing Sirois by failing to investigate Sirois' complaints and/or implement remedial measures, and Greener allegedly aided-and-abetted Frampton in unlawfully terminating Sirois' employment in retaliation for Sirois' complaints by facilitating the phone call during which Frampton fired Sirois, and by drafting the termination letter, which allegedly cited her harassment complaints as the basis of her termination. Because Greener engaged in this alleged conduct with the knowledge that Sirois was a Hawaii resident, it is evident that, "but-for" Greener's alleged actions directed toward Hawaii, Sirois' claims would not have arisen. On the present record, then, Sirois' claims arose out of Greener's forum-related activities. *See, e.g.*, *Spring Patents*, 183 F. Supp. 2d at 1206 (citing *Calder*, 465 U.S. at 788–89).

Finally, exerting specific jurisdiction over Greener is reasonable. Defendants argue that it would be unfair to burden the Colorado-based Greener with defending this lawsuit in Hawaii on account of "passive and/or administrative conduct related to [Greener's] duties" as EWP's Human Resources Director.

Mem. in Supp. at 13 (citing *Walden v. Fiore*, 134 S. Ct. 1115 (2014); *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017)).  Moreover, they argue that "[b]ecause [Greener's] work, residence, and family is located in the State of Colorado, it would present a hardship and inconvenience for [her] to travel to the State of Hawaii to attend legal proceedings there."  Greener Decl. ¶ 11.

However, there is nothing unreasonable or unfair about hailing a non-resident defendant into federal court in Hawaii under the circumstances presented here.  Greener affirmatively acted in the manner described in the Complaint to affect the employment rights and employment environment of a Hawaii-based employee.  She did so knowingly.  In other words, she was not duped or somehow confused into believing that Sirois was located somewhere other than where Sirois was.  Moreover, as Sirois has accurately noted (Opp'n at 23), declining to exercise jurisdiction over Greener could force Sirois to file a separate action, arising out of the identical facts as the claims herein, in another forum, resulting in piecemeal litigation and unreasonably risking inconsistent results.  Thus, although some factors weigh slightly against the exercise of personal jurisdiction here—*e.g.*, those regarding inconvenience to the proposed defendant—the exercise of personal jurisdiction over Greener is reasonable on balance in consideration of the above-described factors and, in particular, because of the "presumption of reasonableness on the present record, given [Greener]'s alleged contacts with Hawaii."  *Spring*

*Patents*, 183 F. Supp. 2d at 1208 (citing *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1201 (9th Cir. 1988)); *see also Am. Tel. & Tel.*, 94 F.3d at 588 (explaining that in determining whether a plaintiff has met her burden of establishing the court's personal jurisdiction over a defendant, "uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor'" (quoting *WNS*, 884 F.2d at 203)); *accord Pure*, 691 F. Supp. at 1277.

## IV. SIROIS MUST EFFECT AND/OR PROVIDE EVIDENCE OF PROPER SERVICE ON THE INDIVIDUAL DEFENDANTS WITHIN THIRTY DAYS.

Sirois served the Summons and Complaint in the instant matter on EWP's Vice-President in Colorado (Jean Shearon) on behalf of Sutton, Frampton, and Greener (*see* Dkt Nos. 13, 14, 15). She defends the propriety of this service exclusively based on Colorado Rule of Civil Procedure ("CRCP") 4(e)(3). *See* Opp'n at 9. The Court finds that proper service is not evident on the record before it.

Under Rule 4(e) of the FRCP, an individual may be served within a judicial district of the United States by: "(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," or by "(2) doing any of the following: (A) delivering a copy of the summons and the complaint to the individual

personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Sirois claims to have followed the rules of the state where service was made—Colorado. Sirois asserts that CRCP 4(e)(3) "authorize[s] service of process on an individual by leaving a copy of the summons and complaint at the person's usual place of business with the person's secretary, bookkeeper, manager, or chief clerk." Opp'n at 9 (quoting *Guarneros v. Deutsche Bank Tr. Co. Americas*, 2009 WL 1965491, at *4 (D. Colo. July 7, 2009) (finding service invalid where plaintiff attempted service on law-firm receptionist, but "firm d[id] not authorize other personnel to accept service for its attorneys," and the "receptionist was not the secretary, bookkeeper, manager or chief clerk" for either of the defendants in question)).[16]

Defendants argue that service was improper because "there is no evidence that Sutton's 'usual place of business' is in Colorado," and "there are no facts or evidence to suggest Shearon is *any individual's* secretary, bookkeeper, manager or chief clerk[.]" Reply at 10. Defendants are correct. Defendant Sutton worked in Hawaii, not Colorado. *See* Compl. ¶¶ 8, 23. Because Colorado was not Sutton's

---

[16]The Individual Defendants do not argue that this interpretation of the Colorado rule is inappropriate, nor do they argue that service should have been made in accordance with the Hawaii Rules of Civil Procedure. Rather, the Individual Defendants focus on the merits of Sirois' CRCP 4(e)(3) claim, so the Court does likewise.

"usual place of business," service on *any* person in Colorado on Sutton's behalf could not have been proper under CRCP 4(e)(3). Further, although Greener and Frampton are both Colorado-based and service was allegedly attempted in Colorado, *see id.*, there is nothing in the record to suggest that Shearon, EWP's Vice President, was the "secretary, bookkeeper, manager, or chief clerk" to either Greener or Frampton. *See Guarneros*, 2009 WL 1965491, at *4. Accordingly, it is not evident that personal service has been properly accomplished on any of the three Individual Defendants.

Plaintiff is directed to either properly serve the Summons and Complaint on Sutton, Frampton and Greener within the meaning of FRCP Rule 4, and/or to file proof with the Court that she has already done so, within thirty days of this Order.

//

//

//

//

//

//

//

//

//

## <u>CONCLUSION</u>

For the foregoing reasons, and except with respect to personal service of the Summons and Complaint, as described above, the Motion to Dismiss Individual Defendants and to Strike Immaterial, Impertinent and Scandalous Matters, filed on August 30, 2017, is DENIED.

IT IS SO ORDERED.

DATED: January 5, 2018 at Honolulu, Hawai'i



Derrick K. Watson
United States District Judge

---

*Alexandra Sirois v. East West Partners, Inc., et al.*, CIV. NO. 17-00383 DKW-RLP, **ORDER GRANTING AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS INDIVIDUAL DEFENDANTS AND TO STRIKE IMMATERIAL, IMPERTINENT AND SCANDALOUS MATTERS**